868 Satanic Temple, Inc. v. Newsweek Thank you, Your Honors, and may it please the Court. My name is Matt Gazzai. I'm appearing on behalf of the appellant, the Satanic Temple. At issue is a question of actual malice, an issue which does not readily lend itself to some redisposition. A jury could find that Newsweek was reckless as to the truth or falsity of a charge that TST engages in sexual abuse and cover-up. The District Court erred by requiring the West... I'm sorry, you said reckless? Reckless as to the truth or falsity of the charge that TST, in fact, engages in sex abuse and cover-up. The District Court erred by requiring direct proof of doubt, by assessing the inferential grounds for doubt piecemeal instead of collectively, and by failing to address all evidence which would support an inference of actual malice. What do you point to as the best evidence in the record that they had any serious doubts to the veracity? There are three grounds that we primarily rely on, without waving anything within the briefs. Number one, the charge asserted a sexual crime. It was undisputed below that sex abuse and cover-up would be sexually criminal activity. Number two, it was conveyed by a source with known hostility to TST. And number three, that source disclaimed personal knowledge of the truth of the matter asserted, whether TST, in fact, engages in sex abuse and cover-up. The way it's phrased in the article is that leaked materials show accounts of sex abuse and cover-up in ways which are more than anecdotal. Each of those three grounds asserted in the article are there to provide substantiation and lead a reader to infer that, in fact, TST engages in sex abuse and cover-up, a matter which is false. Opposing counsel in their response claims it is, in fact, true that there are, in fact, rumors that TST engages in sex abuse and cover-up. Our problem with that is twofold. Number one, it's barred by the republishing rule. The republishing rule posits that you can't, as a publication, simply republish someone else's libel, point to who stated the libel, and disclaim whether or not it is true. Are you on falsity? This is the issue of falsity, yes, Your Honor. So you've moved away from actual malice and you're talking falsity? Yes, Your Honor. I took a moment to segue. Going back to the issue of falsity, those three grounds made it obvious that there was a risk that this claim was false. Can I just make sure that we're on the same page about the claim? After the motion to dismiss, not the personal jurisdiction, the 12b-6, what is left on appeal here is a single statement that I have as, quote, accounts of sexual abuse being covered up in ways that were more than anecdotal. That is the only statement, right, that we're talking about? The entire paragraph must be read to make sense of that sentence. There's context, but that reading of the district court's dismissal, that's the statement the district court allowed to go forward to summary judgment, right? That is the article's statement, but it is our strenuous proposition that the preceding sentence, which says he was leaked materials of that, must be read in conjunction with what is termed the article's statement. So the charge is sex abuse and cover. Let me just make sure that I'm clear. But that is the only statement on which we're proceeding. There's no challenge to the dismissal of the complaint as to the other statements that were originally alleged, right? Correct. Okay. Yes, Your Honor. Our focus is on the specific charge, sex abuse and cover. Well, except the specific charge is accounts of sexual abuse being covered up.  Okay. Which is why I briefly segwayed over to the issue of falsity, because that is, in fact, what Strange said. However, that argument is, in fact, barred by the republishing rule. New York law, as we cited to Garo versus Condi-Nass in the reply brief at page 10, New York law has expressly rejected that as a proposition for defense. You cannot survive liability by simply saying, I heard from Gene Strange that there are accounts of sex abuse and cover-up being raised more than anecdotal. The heart of that charge is false. The heart of that charge is defamatory. And the heart of that charge had facts that Newsweek was aware of, which would have put any actor in the situation of Newsweek on notice that that was false. Again, those three facts that we primarily rely on are, it asserted sexual criminality, it was conveyed by a source with hostility to TST, and he disclaimed personal knowledge of it. I sense a court's about to ask a question. Oh, I just, I, the first point you're making about criminality, can you elaborate? Yes, Your Honor. New York law connotes a duty to investigate when you are accusing someone of criminal activity. The charge at issue, it was undisputed by both the reporter and the editor, this charge connotes sexual criminality. It is sexually criminal to engage in sex abuse. Sex abuse is the material aspect of this that we're taking issue with. The cover-up as well, but sex abuse and cover-up, they specifically admitted that sex abuse would be a crime. Cover-up as well, the editor but not the reporter admitted would be a crime. Now, the reason why I keep emphasizing the facts that would give rise to the obvious grounds for doubt is that's what triggers our duty to investigate. Strange's email opened with and closed with an offer of proof. DeWin did not take him up on that. She didn't so much as ask anyone on the face of the planet what sex abuse and cover-up even means in context of this quote. And all of this fits within the restatement of Tort's definition of recklessness, which we provide in the 28J letter, that when you have awareness of facts that would give rise to obvious doubt and you don't take any precaution in this case to ascertain whether or not that is true, that is actual malice. And the best case we have on point for that is Butts and also this case King in which essentially it's the same thing. I heard that such and such happened and they didn't talk to anyone who actually knew that such and such happened. Reliance on hearsay is obvious grounds for doubt. Unless the court has any other questions, I would reserve the rest for rebuttal. Okay. Thank you. You have three minutes for rebuttal. We'll hear from Counsel Strocker. Good afternoon, Your Honors. My name is Cameron Strocker. I represent Defendant Newsweek in this matter. Your Honors, I'm not going to talk about the truth of the statements at issue here. I think that that's been fully briefed in our papers and we will stand by those arguments. I would like to talk momentarily about the standard of recklessness. Recklessness means a subjective awareness of probable falsity. It means that the declarant, the speaker, the person making the statement has knowledge of something that would cause them to look and discover falsity. When you look at the classic recklessness cases like the Connaughton case, those are cases in which there's information provided to the speaker like a tape on which if the person had listened to the tape, they would have heard things on the tape that would have led them to conclude that what they were publishing was false. There is nothing in the record that is analogous at all to those facts, to the facts of Connaughton or the facts of Butts or the facts of any of the other recklessness cases we've cited in our brief. I heard counsel talk about that this was a sex crime and that the declarant had hostility and that the declarant disclaimed personal knowledge. But none of that, none of those are facts that would cause the speaker to have a subjective awareness of the probable falsity of the statements that the speaker is making. None of that is like a tape where there are other statements on the tape that can turn the speaker around and make the speaker realize that there is falsity that the speaker is about to publish. And by the way, the Butts case, which appellant has just cited, that's not even an actual malice case. The Supreme Court essentially rejected that holding which was a holding on essentially what is gross negligence. The Supreme Court rejected the holding of Butts in the Rosenblatt case and subsequently in the Gertz case and then thereafter in the Connaughton case. Those are, that is not an actual malice case. Actual malice means subjective awareness of probable falsity. And I will say that there is nothing on the record that smacks at all of subjective awareness of probable falsity. If the Court has no specific questions for me, I think it's worth concluding with a sentence from the Court's decision below. The Court concludes by saying, here, similar to Brimelow and unlike the record in Hart-Hanks, there is limited evidence of potential departures from professional standards, there is sparse evidence of bias, and there is a total lack of any evidence that Dean, the reporter, harbored any serious uncertainties or had any obvious reasons to doubt the truth of the article statement. That was the well-founded reasoning of the Court below, and I would urge this Court to affirm it. Can I ask about the personal jurisdiction? Yes. With respect to Dean? Dean, Ms. Dean. Dean. I guess it's hard to find cases sort of exactly like it. And I'm just wondering your understanding of the record with respect to how much of the article is produced and edited in between her and the editor in, I presume, in the headquarters in New York? The record is that she wrote the article and that Nancy Cooper, the editor, did a light edit of it. And she's in New York. She's in New York. And the article is produced and published out of New York? I think it's fair to say that. I mean, the servers are not located in New York, but Newsweek is a New York-located company. So if you want to say that the article was published in New York, we wouldn't contest that. I think it's important to note, though, that the reporters in Washington State, the controversy involves the Washington State lawsuit between Washington residents and a Massachusetts corporation. There's no reference to New York at all in the article. The article has nothing to do with New York. The words New York are not even mentioned. No witnesses are interviewed in New York. No information comes from New York. The only connection to New York is that the company is located in New York. And that's not enough for personal jurisdiction. If Ms. Dean did exactly what she did here, but did it in New York, would you contest personal jurisdiction? Ms. Dean, I'm sorry. No, even that would not be enough, because the test under the New York statute is that there has to be a transaction of business in New York, and the tort has to arise out of that transaction of business. And typically, when courts look at the transaction of business, they look to see what did the reporter do in New York? Did the reporter do any reporting in New York? Was the subject located in New York? Now, if the plaintiff was located in New York, that might be a closer case. Or if there were witnesses and informants located in New York that the reporter talked to, that might be a closer case. If the events that the article was talking about was in New York, that might be a closer case. But here we have none of those factors. Procedural question. She's presumably dismissed without prejudice for lack of personal jurisdiction, right? Yes, I would presume that, yes. If you're wrong on that, but otherwise prevail, it would be a dismissal with prejudice, wouldn't it? Yes, well, the case would be dismissed with prejudice, and presumably she would have a collateral estoppel or res judicata defense should they try to sue her again in Washington State. You're saying even without prejudice? If her dismissal on personal jurisdiction was without prejudice. Which presumably it was. Right, right, right. But if this court were to then affirm the decision on the merits, they could sue her again in Washington State, but I would assume that this decision would act as res judicata or collateral estoppel against any lawsuit that would be brought against her in Washington State. Okay, thank you. Thank you. Judge Kovanec, any questions? No, not at all. Thank you. Thank you. Raboteau for three minutes. I'd like to seize on this notion that Hart-Hanks is different because Strange did not offer any substantiating proof. His email opened up in his own words with an offer to provide the receipts. It closed with an offer to gather more proof of sexual misconduct. But why did the author have to choose that form of proof? Didn't she do a number of interviews? And she did a lot of follow-up. And it sounds like your argument is, in order to pursue this, she had to take advantage of that specific potential offer of proof. She would have to take specific, take him up on a specific offer to look into facts about sexual abuse and cover-up. But she looked into it, right? She just didn't look into it by asking him for his, quote, receipts. She did interview other people, right? She interviewed other people about other things. Not about cover-up of sexual misconduct? Correct. She did not ask Joe Laycock, who we have a voluminous affidavit in the record about that. She did not ask Lucian Greaves, who we have all of his emails in the record about that. Scott Malthus mentioned it in an email, but no differently from Strange, he offers up accounts of some form of sexual abuse and cover-up. These are all hearsay claims that under the Butts decision, which I'll briefly take a moment to segue that Butts did not assert actual malice because it predated the New York Times case that created actual malice, but Hark Hanks, 591 U.S. at 692, expressly adopted Butts for purposes of determining actual malice and is the basis for our proposition that when there are obvious grounds for doubts, such as when in the language of Hark Hanks, the nature of the charge is based wholly on an anonymous telephone call, that triggers a duty to investigate, and the failure to investigate, which is the core ground upon which we rely, is actual malice. And I also want to address this notion of potential departures of publication standards. These were not other people's standards that they departed from. These were Newsweek's own standards. It's the difference between the subjective test, which is recklessness, and an objective test, which is negligence. When I fail to follow my own standards, that's proof of recklessness. The district court discounted that at the outset of the decision. So we have cases that stand to the proposition that not following sort of industry standards is not actual malice. You're saying because it was Newsweek's own standards, that does show actual malice. What's your best case for that proposition? Regrettably, Your Honor, this appears to be an issue of first impression nationwide. I have searched high and low, and I cannot find any instances in which a publication failed to follow their own standards. Presumably, all those cases. Why would there be a difference? I mean, why if you follow, if you don't follow industry standards, is that not relevant to establishing actual malice, but following, I mean, maybe Newsweek's standards are based on that, on some sort of national or industry standard or the like. What's the logic of the distinction you're drawing? The logic of the distinction is subjectivity. Recklessness is I'm aware of a risk of, in this case, falsity. Negligence is a reasonable person would be aware of the risk of falsity. So when my truth-seeking standards say I need to factually investigate a charge of criminality, as Cooper testified, you needed to, that failure to follow that is proof that I recognized and chose, recognized the risk of falsity and chose to not investigate. So because Newsweek incorporated the standard you told us is required anyway into their own guidelines, that shifts it? That shifts the meaning of it outside of the cases referred to by Judge Nathan about industry standards and into a new area? Correct. So by adopting the industry-wide standard or a legal standard to its own guidelines, that's, a publication runs that risk? Yes. And that's not a bad thing. Newsweek gets to have more than one in five Americans read us in their own posts because they have journalistic integrity. We're talking about one of the big three here. If National Enquirer had published this exact same claim, we probably wouldn't be here today because nobody would believe it if it was in the National Enquirer. It's because it was Newsweek that people believed it. It's because of those standards. It's because of that credibility that we are here today. Thank you, counsel. Thank you for your time. The matter is submitted and we'll take it under advisement.